STATE ex rel. Gerald H. GOLDBERG,
Director of Revenue, et al.,
Respondents,

v.

BARBER & SONS TOBACCO,
INC., Appellant.

No. 64555.

Supreme Court of Missouri,
En Banc.

April 26, 1983.

Rehearing Denied May 31, 1983.

⊚⇒1331

Harold L. Fridkin, Richard D. Rhyne, Kansas City, for appellant.

John Ashcroft, Atty. Gen:, Richard L. Wieler, Asst. Atty. Gen., Jefferson City, Russell D. Jacobson, Associate County Counselor, Kansas City, for respondents.

HIGGINS, Judge.

Barber & Sons Tobacco, Inc., appeals a summary judgment for $169,997.80 in interest on unpaid Jackson County cigarette taxes. The Court of Appeals transferred the appeal before opinion because it involves the construction of the revenue laws of this state. Appellant contends the trial court erred because Missouri law did not authorize assessment of penalties or interest against delinquent taxpayers when this cause of action arose; subsequent legislation authorizing such an assessment cannot be applied retroactively; and a purported agreement to pay the interest assessed was not supported by consideration and therefore not enforceable as a matter of law. Reversed.

Barber & Sons is a Missouri corporation with its principal place of business in Kansas City, Jackson County, Missouri. The company is engaged in the business of selling cigarettes to retail dealers who in turn sell the cigarettes to the general public. Jackson County, Missouri, is a political subdivision of the State of Missouri, having a constitutional home rule charter. By county court order, it adopted the county cigarette tax authorized by section 210.320 RSMo.

The Director of Revenue for the State of Missouri and the Director of Revenue for Jackson County assessed Barber & Sons in the amount of $638,581.60 for Jackson County cigarette taxes which were not paid between January 1972 and May 1974; a penalty of $676,031.60 and interest of $255,-200.29 was also assessed for a total amount due of $1,569,863.59. The Department of Revenue demanded payment by March 15, 1976. The notice of assessment also informed Barber & Sons that a hearing on the matter was scheduled for March 5, 1976.

Barber & Sons appeared at the hearing and objected to the notice of assessment and petitioned the Director of Revenue of the State of Missouri for reassessment. The hearing was recessed at appellant's request in order that appellant could review its books and records. On March 30, 1976, the parties entered into negotiations to settle their dispute.

Through correspondence it was ultimately agreed that Barber & Sons would pay $638,581.60 in unpaid tax, plus an additional $169,997.80 as interest thereon. As part of this arrangement the Department of Revenue abated the original penalty and interest and agreed not to enforce criminal provisions contained in the county cigarette tax statute. On January 4, 1977, Barber & Sons petitioned the circuit court for review of the assessment under section 536.110 RSMo. The petition was dismissed with prejudice on August 23, 1977, on the ground that the controversy was rendered moot by Barber & Sons' interim payment of the principal sum of $638,581.60. The interest was never paid.

On February 26, 1979, the Department of Revenue and Jackson County sued Barber & Sons for the amount of unpaid interest. The circuit court granted summary judgment in their favor on March 9, 1982, and ordered Barber & Sons to pay the Department of Revenue $169,997.80 plus costs.

Barber & Sons contends that section 210.320 RSMo (1969), which was in effect during the period for which the unpaid Jackson County cigarette taxes were assessed, did not authorize the assessment of interest on such delinquent taxes and therefore it is not liable for the interest assessed on the unpaid taxes. The Department of Revenue counters this contention and argues further that Barber & Sons is liable for the unpaid interest pursuant to a valid agreement between the parties and that the attempt by Barber & Sons to avoid payment of the interest is an unlawful collateral attack on the original assessment.

## I.

■ Jackson County's authority to collect cigarette tax is found in section 210.320 and chapter 149 RSMo. The former statute authorizes a county cigarette tax and the latter a state cigarette tax. Section 210.320 RSMo provides that the county cigarette tax shall be collected in the same manner provided in chapter 149. Because both statutes concern the same subject matter they are in *pari materia* and, although found in different chapters, must be construed together. *ITT Canteen Corp. v. Spradling,* 526 S.W.2d 11, 16 (Mo.1975); 2A C. Sands, Sutherland Statutory Construction § 57.06 (4th ed. 1973).

■ Article X, Section 1 of the Missouri Constitution of 1945 provides in part that:

The taxing authority may be exercised by the general assembly for state purposes and by counties and other political subdivisions under power granted to them by the general assembly. . . .

Hence, the power to tax is a legislative function and its exercise by a political subdivision must be based on "specific or clearly implied" authority delegated to it by the general assembly. *State ex rel. Agard v.*

*Reiderer,* 448 S.W.2d 577, 579 (Mo. banc 1969). The imposition of interest on the delinquent county cigarette taxes here is an exercise of the power to tax and the specific or clearly implied authority to do so is lacking.

■ Section 210.320 RSMo (1969) did not provide for the assessment or collection of interest on unpaid county cigarette taxes during the period in question. Section 149.060 RSMo (1969) did provide for a penalty equal to one hundred per cent of the amount of the tax to be assessed plus interest at the rate of six per cent per annum; however, this provision was applicable only when the taxpayer failed to affix stamps as required in that chapter. Nowhere did chapter 149 provide for an assessment of interest for a failure to pay either the state or county cigarette tax during the period in question. Under the familiar maxim of statutory construction *expressio unius est exclusio alterius,* the legislature in its express provision for the accrual of interest upon a failure to affix stamps, must be presumed to have intentionally negatived the accrual of interest for any other failure to comply with the statute. *Maguire v. The State Savings Assoc.,* 62 Mo. 344, 346 (1876).

■ Section 210.320 RSMo was amended by the legislature in 1976 and subsection 7 thereof expressly provides that upon a failure to pay the county cigarette tax, the Director of Revenue shall assess a penalty equal to one hundred per cent of the tax due and the tax and penalty thereon shall bear interest at the rate of six per cent annum from the date such cigarettes were sold until the date of payment. Because the county cigarette taxes in this case accrued prior to the amendment, application of the statute as amended to this case would cause it to operate retrospectively in violation of article I, section 13 of the Missouri Constitution.

## II.

■ The Department of Revenue and Jackson County contend, nevertheless, that Barber & Sons is liable for the unpaid interest in question pursuant to a valid agree-

ment between the parties. They base this argument on an exchange of letters between Barber & Sons and the Director of Revenue for the State of Missouri. Such correspondence indicates that Barber & Sons offered to pay the delinquent county cigarette taxes plus interest thereon at the rate of six per cent per annum and that the Director of Revenue purported to accept this offer. The agreement is unenforceable because of a failure of consideration on the part of the Director of Revenue.

As part of the arrangement to compromise the dispute over the amount of the unpaid county cigarette taxes, the Director of Revenue agreed not to enforce the criminal provisions of the tax statute. Consideration for a simple contract may consist of a party refraining from doing anything he has a legal right to do. *Wells v. Hartford Acc. & Indem. Co.,* 459 S.W.2d 253, 260 (Mo.1970). If the Director of Revenue had a legal right to bring criminal proceedings against Barber & Sons, his forbearance from doing so would have been sufficient consideration to support the agreement. Respondents' argument is deficient in that the legislature did not provide for a penalty and interest upon a failure to pay the county cigarette tax; nor did they make failure to pay such tax a crime. *State v. Raccagno,* 530 S.W.2d 699, 702–03 (Mo.1975). Therefore, the Director of Revenue had no legal basis on which to prosecute Barber & Sons for the failure to pay the tax and refraining from doing so was not sufficient consideration to support the agreement to pay interest thereon.

Respondents also argue that the abatement of the original penalty and interest was sufficient consideration for the agreement. It has already been demonstrated that such penalty and interest was not authorized by the statute during the period in question and respondents had no legal right to assess or collect it. Therefore, its abatement is no more a sufficient consideration for the agreement than was refraining from bringing criminal charges against Barber & Sons. *See Wells,* 459 S.W.2d at 260; 17 C.J.S. *Contracts* § 103 (1963).

Similarly, respondents argue that the compromise of the disputed claim itself was sufficient consideration for the agreement to pay interest. Such argument might have merit if this case involved the original dispute over the amount of the unpaid taxes, but the subject of the present litigation is Barber & Sons' liability for the interest thereon. The compromise was not in settlement of the present dispute and therefore is not sufficient consideration to support the agreement to pay interest.

Respondents argue finally that Barber & Sons' attempt to avoid the payment of interest is an unlawful collateral attack on the original assessment. There was neither specific nor clearly implied authority to collect the interest in question and the alleged agreement has been found to be unenforceable. This creates a jurisdictional defect in the assessment which renders it void and subject to collateral attack. *State v. Kosovitz,* 342 S.W.2d 828, 830 (Mo.1961).

Accordingly, the summary judgment in favor of respondents is reversed with direction to enter summary judgment in favor of Barber & Sons Tobacco, Inc.

WELLIVER, GUNN, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

The plaintiff Director's uncontradicted affidavits show that an assessment was made against the defendant for $1,314,-663.20, consisting of $638,581.60 in unpaid cigarette taxes, $676,081.60 in penalties, and interest on the balance until paid. The defendant's then attorney (not affiliated with the attorney or the firm who represented it during the trial or appeal), made an offer in compromise, and after exchanges of correspondence, a settlement agreement was pieced together calling for the immediate payment of $200,000 and payment of the balance, including interest,

at a later date. The defendant paid the entire principal balance but did not pay the interest. The principal opinion now holds that the compromise and settlement was ineffective, on the basis that there was a "failure of consideration" because the governing statutes did not authorize the assessment and collection of any interest and penalties. I believe that the uncontradicted evidence demonstrates that there was a valid compromise agreement, supported by consideration, and that this agreement is legally enforceable.

I agree with the statement in the principal opinion that taxes, and also interest and penalties for the nonpayment of taxes, must be expressly authorized by statute. I am not at all sure, however, that the interest and penalties sought to be collected in this case were not authorized by the governing statute, § 210.320, RSMo 1969[1] which reads in pertinent part as follows:

4. The county cigarette tax shall be collected by the division of collection of the state department of revenue. The division shall each day retain, from the county tax collected, one percent of the amount collected and deposit that amount in the state general revenue fund to help defray the cost to the state of collecting and distributing this tax.

5. The tax shall be paid and stamps affixed in the same manner as is provided by chapter 149, RSMo, for the state cigarette tax; except that no discount shall be given any wholesaler for affixing stamps or making reports required by the division.

These provisions refer expressly to Chapter 149, entitled "Cigarette Tax," which specifies provisions for the assessment and collection of the state cigarette tax. Section 149.060.1 authorizes interest and penalties on the state tax, in the following language:

1. Any person who fails to affix the stamps within the time and in the manner required of him by this chapter shall pay, as a part of the tax imposed by

section 149.020, a penalty equal to one hundred percent of the amount of the tax to be assessed and collected with the tax by the division as sales taxes are collected, and the tax and penalty thereon shall bear interest at the rate of six percent per annum.

At the very least a substantial claim could be made that § 210.320.5, in its reference to Chapter 149, borrowed and incorporated the interest and penalty provisions of § 149.060.1. This argument is aided by pointing to the express exclusion in § 210.320.5 of wholesellers' discounts, which is an obvious reference to § 149.030.3. The absence of other exclusions might be considered significant.

The amendment of the statute to provide expressly for interest and penalties for failure to pay the County Cigarette Tax is of no significance in construing the statutory provisions which governed when the taxes here in question accrued.

But, in the view I take of the matter, is it not necessary for the Director to demonstrate that the penalties and interest were properly assessed. All that need be shown is that an apparently serious claim to them was made. If such a claim has been made, then an agreement to compromise is supported by valid consideration. One who enters into a valid agreement of compromise cannot avoid his obligations under the agreement by showing that he could have prevailed on the underlying claim, if it were taken to litigation. See *Wood v. Kansas City Home Telephone Company*, 223 Mo. 537, 565, 123 S.W. 6, 15 (1909); *Weinberg v. Globe Indemnity Corporation*, 355 S.W.2d 341, 346 (Mo.App.1962); 15A C.J.S., Compromise and Settlement, Sec. 11b; 15A Am. Jur.2d Sec. 15, in which it is said:

... a settlement payment made when the law was uncertain cannot be successfully attacked on the basis of a subsequent resolution of the uncertainty, since otherwise the public policy of encouraging settlements would be seriously undermined.

---

1. Because of the presence of legally sufficient consideration in the forbearance of interest and penalties and in the extension of time, we do not have to consider the forbearance to seek criminal sanctions, nor whether any criminal sanctions were available.

We do not have to decide whether a claim which is utterly devoid of merit would support a compromise agreement. The claim made here was a substantial one. The defendant taxpayer was concerned both about the amount of the claim and about the time for payment. The taxpayer, besides liquidating the amount owed, received a delay and forbearance which was expressly bargained for and which furnishes additional consideration for the compromise agreement. This taxpayer, after obtaining an adjustment and forbearance on terms apparently satisfactory to it, should not be allowed to repudiate the obligation it deliberately assumed.

There is no reason why the Director, just as a private party, should not be able to enter into and to enforce a compromise agreement.

The conclusion in the principal opinion that the compromise agreement lacked consideration is not legally supportable. The judgment should be affirmed.