James G. Spencer Prosecuting Attorney Sullivan County, Missouri 103 North Market, P.O. Box 69 Milan, MO 63556-0069
Dear Mr. Spencer:
You have submitted the following question to this office for reply:
Do the provisions of Section 190.300 through190.340 RSMo apply to an "Enhanced 9-1-1 and Central Dispatch System" which is funded by a 1/2 percent sales tax authorized by and enacted pursuant to Section 67.547
RSMo?
In the information that you supplied you provided the history of an election held in 1996. For purposes of this opinion we assume that the information you supplied is accurate.
On June 11, 1996 the Sullivan County Commission authorized the placement on the August primary ballot the following proposition:
Shall the County of Sullivan impose a county-wide sales tax of 1/2 percent to be used for the implementation and operation of a county-wide Enhanced 9-1-1 and central dispatch system?
YES [ ] NO [ ]
When the County Commission authorized the election, it did so by reference to Section 67.547 RSMo. That section provides in part:
1. In addition to the tax authorized by section67.505, any county may, by a majority vote of its governing body, impose an additional county sales tax on all sales which are subject to taxation. . . . The tax authorized by this section shall be in addition to any and all other sales tax allowed by law; except that no ordinance or order imposing a sales tax under the provisions of this section shall be effective unless the governing body of the county submits to the voters of the county, at a county or state general, primary or special election, a proposal to authorize the governing body of the county to impose such tax.
2. The ballot of submission shall contain, but need not be limited to the following language:
Shall the county of ___________________ (county's name) impose a countywide sales tax of ___________________ (insert rate) percent?
[ ] Yes [ ] No
If you are in favor of the question, place an "X" in the box opposite "Yes". If you are opposed to the question, place an "X" in the box opposite "No".
If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then the ordinance or order and any amendments thereto shall be in effect. If a majority of the votes cast by the qualified voters voting are opposed to the proposal, then the governing body of the county shall have no power to impose the sales tax as herein authorized unless and until the governing body of the county submits another proposal to authorize the governing body of the county to impose the sales tax under the provisions of this section and such proposal is approved by a majority of the qualified voters voting thereon.
When the County Commission authorized the tax it stated that it was submitting to the voters the question whether a 1/2 percent sales tax should be imposed to "provide for the establishment and on-going operational cost of and (sic) Enhanced 9-1-1 emergency telephone service." The ballot language was identical to that authorized by the County Commission.
Since the time the County Commission adopted the resolution some provisions of Sections 190.300 — 190.340 have been changed. It is, therefore, necessary to examine those provisions in effect when the County Commission authorized the election.
Section 190.305 RSMo 1994 authorized a tax levy for an emergency telephone service in an amount not to exceed fifteen percent of the tariff local service rate. That section had other provisions not relevant to the discussion herein. Section 190.320
RSMo 1994 has not changed. It provides:
Before any governing body may establish emergency telephone service and impose an emergency telephone tax under the provisions of sections 190.300 to 190.320, it shall submit a proposal to its voters for the approval of such service and such tax. The ballot of submission shall contain, but need not be limited to, the following language:
May the (City, County) of _______________ establish an emergency telephone service and impose a telephone tax to finance such service?
[ ] Yes [ ] No
The initial tax imposed shall be _______________
(Here the governing body in 25 words or less shall describe the tax per telephone per year or any other wording which will give the voter an approximation of what the tax will cost the taxpayer.)
If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then the governing body may establish the service and impose the tax allowed by the provisions of sections 190.300 to 190.320. If a majority of the votes cast on the proposal by the qualified voters voting thereon are opposed to the proposal, then the governing body submitting the proposal shall not be allowed to implement the provisions of sections 190.300 to 190.320
until it has again submitted such proposal to its qualified voters and a majority of the votes cast are in favor of the proposal.
It is clear that the ballot language utilized in 1996 did not follow the recommended language of either Section 67.547 RSMo or Section 190.320 RSMo. Apparently, the County Commission took the recommended language from Section 67.547 RSMo and added the tail "to be used for the implementation and operation of a county-wide Enhanced 9-1-1 and central dispatch system."
Sections 190.335 and 190.337 RSMo 1994 apply to central dispatch for emergency services that can be adopted in lieu of the tax levy authorized under Section 109.305. In Section 190.335
RSMo 1994 a county commission may impose a tax levy for central dispatching of emergency services of fire protection, law enforcement, and ambulance services "in lieu of the tax levy authorized under section 190.305." Such a tax levy is subject to approval of the voters with the submission to be "in substantially the following form:"
 Shall the county of ___________________ (insert name of county) impose a countywide sales tax of ___________________ (insert rate of percent) percent for the purpose of providing central dispatching of fire protection, emergency ambulance service, including emergency telephone services, and other emergency services?
[ ] Yes [ ] No
The question you have asked can be stated whether the election in 1996 of a ballot measure that does not comport to the statutory language nevertheless authorize the imposition of a tax to be used solely for an enhanced 9-1-1 emergency number and central dispatch system. There is no doubt that the language utilized for the election in 1996 did not follow statutory mandates and, therefore, there was an "election irregularity" as contemplated in Section 115.593 RSMo 1994. However, such an irregularity must be "of sufficient magnitude to cast doubt on the validity of the initial election." Overturning elections because of irregularities are to be utilized sparingly. Gerrard v. Boardof Election Commissioners, 913 S.W.2d 88 (Mo.App. 1995).
Any election challenge has to be filed not later than thirty days after the official announcement of the results. See Section115.577 RSMo 1994. As no such contest was filed as provided in Section 115.575 RSMo 1994, then the election results remain valid. Only election contests authorized by statute can be maintained.Felker v. City of Sikeston, 334 S.W.2d 754 (Mo.App. 1960).
The power to tax for a county or a political subdivision must be based upon specific or clearly implied authority from the general assembly. State ex rel. Goldberg v. Barber SonsTobacco, Inc., 649 S.W.2d 859 (Mo.banc 1983). That authority has been conveyed to the county as set forth above.
In State v. County Commission of Johnson County,918 S.W.2d 252 (Mo.banc 1996) the court was faced with a similar issue. The plaintiffs sought to invalidate a sales tax passed thirteen years previous to the initiation of the suit, claiming that the ballot language deviated from the statutory language for such a sales tax. The language in the ballot substituted the word "may" for the word "shall" and authorized a maximum rate of tax but not an exact amount of tax. Johnson County, supra at 255. However, because the suit was in effect a challenge to the decision and it was commenced beyond thirty days after the election, the court rejected the suit and quoted the Missouri Supreme Court in Beattyv. Metropolitan Sewer District, 700 S.W.2d 831, 838 (Mo.banc 1985), wherein it stated "The wording of the proposition on a ballot and the propriety of the notice of election are issues cognizable only in an election contest." Accordingly, it would be inappropriate to challenge the authorization of the 1/2 percent sales tax for enhanced 9-1-1 and central dispatch service four years after the election.
 CONCLUSION
The funding by a sales tax of 1/2 percent for an enhanced 9-1-1 and central dispatch system, when approved by the voters pursuant to the ballot question listed herein, although an election irregularity, in the absence of a timely election challenge, is valid.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
BOARD OF COUNTY VISITORS: Members of the Board of County COUNTY OFFICIALS: Visitors are not immune from LEGAL EXPENSE FUND: liability for their acts as Board members because they are volunteers; however, they have available defenses such as the public duty doctrine and official immunity. Board members are not state officials and are not covered by the provisions of the State Legal Expense Fund.